UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ORLANDO WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **4:19-cv-1696-KOB** |
| **UNITED STATES OF AMERICA,** *et* ) | |
| *al.*, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This matter comes before the court on Defendant United States' Motion for Summary Judgment. (Doc. 65). Proceeding *pro se*, Plaintiff Orlando Williams claims the United States, acting through its agency the Veteran's Administration, committed medical malpractice under the Alabama Medical Liability Act. *See* Ala. Code § 6–5–548. Mr. Williams brings his medical malpractice claims under the Federal Tort Claims Act, which permits a plaintiff to sue the United States "in the same manner and to the same extent as a private individual under like circumstances." *See* 28 U.S.C. § 2674.

Specifically, Mr. Williams claims that several health care providers at the Veterans Affairs Medical Center in Birmingham, Alabama conducted MRI exams in 2011 and 2017 and then negligently failed to appropriately treat a spinal growth

1

that was visible on the MRIs. This failure, he claims, caused him pain and suffering, negatively impacted his career, and caused him other damages.

Defendant has moved for summary judgment (doc. 65), and Mr. Williams responded (doc. 72).[1] After Defendant filed its motion for summary judgment, Mr. Williams moved the court under Fed. R. Civ. P. 59(e) to reconsider its prior ruling rejecting his second request to extend the expert disclosure deadline. (Doc. 73). Defendant responded to the motion to reconsider. (Doc. 75).

As explained below, the court will grant Defendant's motion for summary judgment and deny Mr. Williams's motion to reconsider. The court will address the motion to reconsider first, before analyzing Defendant's motion for summary judgment.

## MR. WILLIAMS'S MOTION TO RECONSIDER

The court originally required Mr. Williams to disclose his expert witnesses no later than November 15, 2021. (Doc. 46 at 2). Before November 15, Mr. Williams moved the court to extend the expert disclosure deadline. (Doc. 60). That motion did not explain the reasons for requesting the extension, but it stated that he would "submit more information to the court by November 24, 2021." (Doc. 60 at

---

[1] Mr. Williams titled his responsive filing: "Objections to § 6–5–548, Ala. Admin. Code 1975 Expert Report of America." (Doc. 72). Mr. Williams filed no other document responding to Defendants' motion for summary judgment. But because the "Objections" challenge the evidence supporting Defendants' motion for summary judgment, the court construes it as a response to that motion.

2

8). The court granted that motion, extending Williams's expert disclosure deadline to January 14, 2022. (Doc. 61). Williams never submitted additional information.

Instead, Mr. Williams moved the court to extend the expert disclosure deadline again on January 7, 2022. (Doc. 62). The text of that motion was virtually identical to the text of Mr. Williams's prior motion for an extension; neither motion explained the reasons for Mr. Williams's delay in disclosing an expert witness or his progress toward retaining one. So, the court denied Mr. Williams's second motion for an extension on January 10, 2022. (Doc. 63). Mr. Williams disclosed no witness before the January 14 deadline.

On February 15, 2022—after Defendant declared its expert witness and after Defendant filed its motion for summary judgment—Mr. Williams moved the court under Fed. R. Civ. P. 59(e) to reconsider its denial of his second request for an extension for expert disclosure in January 2022. (Doc. 73 at 5). Mr. Williams claims that he paid an expert witness on January 12, 2022. He provides a redacted receipt from January 12, purportedly showing that he paid a radiologist $1,525.00. (Doc. 73-1). And he provides an invoice for $1,525 from the radiology expert, dated October 20, 2021. (Doc. 73-2). He argues that this information constitutes "newly discovered evidence or manifest errors of law or fact," warranting reconsideration of the court's prior ruling. (Doc. 73 at 5) (quoting *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)). The court disagrees.

Parties "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

Mr. Williams's receipt showing that he paid an expert witness on January 12, 2022 while failing to disclose that witness before the January 14 deadline does not constitute "newly discovered evidence." It merely shows his failure to timely retain an expert and comply with the final expert disclosure deadline the court ordered in November 2021.[2] (Doc. 61).

Also, Mr. Williams received an invoice from his purported radiology expert on October 20, 2021—three months before his final expert disclosure deadline on January 14 and the court's denial of his second motion for an extension on January 10. Yet, neither of Mr. Williams's motions for an extension mentioned the expert or the October 2021 invoice. If Mr. Williams possessed that invoice in October 2021 and *knew* the identity of his purported radiology expert, then that information constitutes evidence "that could have been raised prior to the entry of judgment" in January 2022. *See Michael Linet, Inc.*, 408 F.3d at 763. So Mr. Williams fails to present newly discovered evidence justifying reconsideration.

---

[2] At the Scheduling Conference held on July 20, 2021, the court explained in detail to Mr. Williams the requirement under Alabama law that he hire an expert witness and present a report from that witness by the deadline in the Scheduling Order.

Nor does the court find a "manifest error of law or fact" based on Mr. Williams's submissions. Mr. Williams identifies no erroneous ruling of fact in denying his second motion for an extension. Rather, Mr. Williams failed to alert Defendant and the court to the existence of his radiology expert and the October 2021 invoice. He also failed to take efforts to produce the required report from that expert. And he waited to disclose the information and invoice from his expert until after the Defendant had disclosed its medical expert and filed for summary judgment. The court finds no error of law or fact in its prior ruling, given the dearth of information Mr. Williams provided in January 2022.

So the court will DENY Mr. Williams's motion to reconsider its denial of his second request for an extension of the expert disclosure deadline. The court now turns to Defendant's motion for summary judgment.

## BACKGROUND

### I. Facts

Mr. Williams served in the United States Army from 2000 to 2003, including a tour in Iraq. After his military service, Mr. Williams served as a correctional officer with the Alabama Department of Corrections for just over six years, until 2011.

On May 12, 2011, Mr. Williams went to the VA Hospital in Birmingham for an assessment of pain in his left shoulder and neck. After an MRI examination, Mr.

Williams's examining physician found his spinal cord to be "normal" and found "no evidence of intra medullary abnormal signal intensities, *tumor* or syrinx." (Doc. 32 at 15) (emphasis added).[3]

Mr. Williams continued to suffer from back pain, and he returned to the VA hospital as a walk-in patient on September 29, 2017. The VA medical records state that Mr. Williams was having "sharp pain" near several discs in his spine. (Doc. 66-1 at 3). The physician's notes continue: "He tells me that [the painful area] was Bx [i.e., biopsied] outside the VA at Grandview and they told him it was Benign. Will forward to his pcp [primary care physician] for eval and treatment." (*Id.*). That same day, the physician ordered an MRI of Mr. Williams's thoracic spine. (*Id.* at 4). The notes reflect that Mr. Williams left the hospital "in satisfactory and stable condition[.] Veteran was satisfied with this visit." (*Id.* at 5).

After that visit, Mr. Williams underwent his second MRI on October 10, 2017 at the VA hospital. The report of that MRI examination found: "Vertebral body height and disc spaces are well-maintained. Alignment is normal. The visualized cervical and lumbar spine is normal." (Doc. 66-1 at 7). The report found a "T2 hyperintense and T1 iso/hyperintense lesion" in one part of the spine but concluded, "these are likely not clinically significant." (*Id.*). The report also indicates that the examiner reached the conclusions after conducting a

---

[3] The court cites to the allegations in Mr. Williams's complaint about the results of his 2011 MRI because neither party presents the medical records for that MRI assessment.

6

"comparison" between the results of the October 2017 MRI and the results of the May 2011 MRI. (*Id.* at 6). The report does not identify a malignant or harmful tumor.

Mr. Williams then requested that a neurologist offer a second opinion as to the MRI images. On October 13, 2017, the neurologist provided a written opinion, which states:

> I have reviewed the images. Enhancing lesion in T4 vertebral body. Official read by neuroradiology is likely hemangioma. These are benign lesions typically located in the thoracic spine. They are most commonly incidental findings and usually asymptomatic. Symptomatic cases represent approximately less than 1% of cases. These lesions can cause pain noted with increase in activity or if they cause collapse of vertebra or encroach on the neural canal which is not seen on imaging in this case. Treatment is typically not needed and the report of pt remaining neurologically intact is reassuring. If exam changes would refer him for urgent workup but do not expect this to be the case.

(Doc. 66-1 at 9).

Mr. Williams's complaint alleges that his treating physicians as the VA negligently failed to treat a spinal growth that was visible on the MRIs from May 2011 and October 2017. (Doc. 32 at 20 *et seq*.). He claims that the VA physicians' conduct breached the appropriate standard of medical care under the Alabama Medical Liability Act.

## II.    **Expert Testimony**

As explained above, Mr. Williams failed to timely disclose an expert to testify about his injuries and the appropriate standard of care. This failure dooms Mr. Williams claim, as explained below. Even so, Defendant supports its motion for summary judgment with the expert report of Dr. Gordon Sze, MD. (Doc. 66-2). Dr. Sze is Professor of Radiology and Chief of Neurology at Yale University School of Medicine. (*Id.* at 5). He has served as president of national neuroradiology and radiology associations and written over 130 peer-reviewed publications. He is also licensed to practice medicine in Connecticut.

After reviewing Mr. Williams's medical records and Mr. Williams's MRI images, Dr. Sze concluded:

> [Mr. Williams] has no symptomatic tumors. Instead, he has an asymptomatic and benign vertebral hemangioma, that was correctly diagnosed by the VA from the [MRI] of 10/10/17. In fact, he has 2 small benign vertebral hemangiomas, both of which were correctly diagnosed in his VA medical records.

(Doc. 66-2 at 6).

Dr. Sze notes that Mr. Williams's benign vertebral hemangiomas are "very common, seen in up to 37% of all patients." (*Id.* at 7). He concludes that Mr. Williams's MRIs show

> No signs of aggressiveness. . . . These hemangiomas would not be expected to be symptomatic and would not be treated. The report in this case did diagnose both hemangiomas and falls well within the standard of care. It is my opinion that Orlando Williams received

8

appropriate, evidence-based medical care in accordance with proven, effective medical standards.

(Doc. 66-2 at 8).

## **LEGAL STANDARD**

The court will set forth the standard governing Defendant's motion for summary judgment. And because Mr. Williams states a medical malpractice claim under the Alabama Medical Liability Act and the Federal Tort Claims Act, the court will also address the legal standard for that claim as well.

### I. **Summary Judgment Standard**

Generally, courts must construe *pro se* complaints more liberally than they construe pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). But "a pro se litigant does not escape the essential burden under summary judgment standards" of showing a genuine issue of material fact to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact and in which the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must "view the evidence presented through the prism of the substantive evidentiary burden." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 254 (1986). But the court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *Id*. at 255. And the court must view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

## II. Federal Tort Claims Act and Alabama Medical Liability Act Standards

Under the Federal Tort Claims Act, "the extent of the United States' liability is generally determined by reference to state law." *Dutton v. United States*, 621 F. App'x 962, 966 (11th Cir. 2015) (quoting *Molzof v. United States*, 502 U.S. 301, 305 (1992)). Accordingly, the FTCA requires that the "whole law of the State where the act or omission occurred . . . be applied." *Gonzalez-Jiminez De Ruiz v. United States*, 378 F.3d 1229, 1230 n.1 (11th Cir. 2004). Here, Alabama law applies because Defendant's allegedly tortious conduct occurred in Alabama. And because Mr. Williams raises claims of medical malpractice, the Alabama Medical Liability Act (AMLA) governs his claims. *See* Ala. Code § 6–5–548(a) (providing that the AMLA applies "in any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care").

> The Alabama Medical Liability Act provides:
>
> [T]he plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.

Ala. Code § 6–5–548(a). To meet this burden, the plaintiff in a medical malpractice case "must ordinarily establish the defendant physician's negligence

11

through *expert testimony* as to the standard of care and the proper medical treatment." *Pruitt v. Zeiger*, 593 So. 2d 236, 237–38 (Ala. 1991) (emphasis added).

An exception to the expert-medical-testimony rule exists "where the lack of care is so apparent as to be within the ken of the average layman." *Jones v. Bradford*, 623 So. 2d 1112, 1115 (Ala. 1993). But that exception applies in only four circumstances:

> (1) where a foreign instrumentality is found in the plaintiff's body following surgery; (2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; (3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and (4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.

*Id.* (quoting *Allred v. Shirley*, 598 So. 2d 1347, 1350 (Ala. 1992).

## ANALYSIS

As explained above, Mr. Williams failed to provide medical expert testimony as to the appropriate standard of care and whether the conduct of the VA physicians breached that standard. As the Alabama Supreme Court has stated, "if the standard of care is not established, there is no measure by which the defendant's conduct can be gauged." *Pruitt*, 590 So. 2d at 238. Because Mr. Williams failed to provide expert testimony as to the standard of care, he fails to meet his burden of presenting "substantial evidence" from a medical expert, as part

of his *prima facie* case, that the VA physicians breached that standard of care under Alabama law. *See* Ala. Code § 6–5–548(a).

And this case does not fall into one of the four circumstances in which a plaintiff need not present expert testimony under Alabama law. *See Jones*, 623 So. 2d at 1115. First, Mr. Williams's injuries do not stem from a foreign instrumentality following surgery. Second, medical records show that the VA physicians directly assessed, diagnosed, and treated the back pain and tumors underlying his complaint; so the injury "complained of" *is* connected to the condition for which he sought treatment. *Id.* Third, Mr. Williams provided no medical authority as to the standard of care. And fourth, Mr. Williams is not a medical expert. So Mr. Williams's lack of medical expert testimony fails to raise a genuine dispute of material fact as to whether the VA physicians breached the standard of care.

Because Mr. Williams failed to present an expert opinion showing that the VA physicians breached the standard of care, Mr. Williams's medical malpractice claim fails and summary judgment against him is appropriate on that ground.

Alternatively, the court has examined Defendant's expert testimony from Dr. Sze, and the court finds that testimony to show that the VA physicians did not breach the appropriate standard of care. Dr. Sze agrees with the VA physicians in diagnosing Mr. Williams with "asymptomatic and benign vertebral hemangioma."

*Compare* (Doc. 66-2 at 6) *with* (doc. 66-1 at 9). Based on that finding, Dr. Sze also agrees with the VA's consulting neurologist that the hemangiomas did not merit treatment. *Compare* (Doc. 66-2 at 8) *with* (doc. 66-1 at 9). And after reviewing the medical records that Mr. Williams provides, the court finds no reason to doubt Dr. Sze's conclusion that Mr. Williams "received appropriate, evidence-based medical care in accordance with proven, effective medical standards." (Doc. 66-2 at 8). So summary judgment is appropriate on this ground as well.

Mr. Williams's only response to Defendants' motion challenges Dr. Sze's expert opinion.[4] Mr. Williams argues that Dr. Sze "is not qualified to offer opinions . . . that [Mr. Williams] has a history of post-traumatic stress disorder." (Doc. 72 at 6–7). Williams argues that this lack of qualification renders Dr. Sze's opinion a "no report and not subject to cure." (*Id.* at 7). Although the introduction of Dr. Sze's comments briefly notes Mr. Williams's "history of post-traumatic stress disorder" (doc. 66-2 at 6), Dr. Sze's opinion does not rely on that fact for its conclusions. And Mr. Williams's post-traumatic stress disorder is not a material fact concerning his claims as to spinal growths and tumors. (Doc. 74 at 1). The court finds no issue with Dr. Sze's qualifications as to his conclusions about Mr. Williams's spinal growths—the only conclusions relevant to Mr. Williams's

---

[4] As explained above, Mr. Williams's only filing responding to Defendant's motion "objects" to Dr. Sze's expert report. (Doc. 72). But the court construes that filing as a response to Defendant's motion for summary judgment.

claims. So Dr. Sze's comment about post-traumatic stress disorder does not undermine his conclusions about the appropriateness of the VA physicians' care for Mr. Williams's benign hemangiomas.

In sum, Mr. Williams fails to provide any expert testimony to support his malpractice claims and rebut Dr. Sze's findings. And this case does not present the circumstances justifying an exception to the requirement for expert medical testimony. So Mr. Williams fails to show a genuine dispute as to whether Defendant breached the appropriate standard of medical care. Alternatively, the court finds that Dr. Sze's expert testimony establishes both the appropriate standard of medical care and that Defendant did not breach that standard. Summary judgment is appropriate on that ground as well.

The court will GRANT Defendant's motion for summary judgment as to Mr. Williams's medical malpractice claim under the Alabama Medical Liability Act.

## **CONCLUSION**

By separate Order, the court will deny Mr. Williams's motion to reconsider because he has not presented newly discovered evidence or a manifest error of fact or law justifying that request. And the court will grant Defendant's motion for summary judgment because Mr. Williams fails to show a genuine dispute as to the appropriate standard of medical care and that Defendant breached that standard.

**DONE** and **ORDERED** this 14th day of April, 2022.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE